## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| _____ | } | |
| CHERYL WALTERS et al. | } | CASE NO. 8:18- cv-02875-EAK-CPT |
| | } | |
| | } | DEFENDANT BMW OF NORTH |
| Plaintiffs, | } | AMERICA, LLC'S |
| | } | MEMORANDUM OF LAW IN |
| vs. | } | SUPPORT OF ITS MOTION TO |
| | } | DISMISS PLAINTIFFS' FIRST |
| BMW OF NORTH AMERICA, LLC. | } | AMENDED COMPLAINT OR IN |
| | } | THE ALTERNATIVE SEVER THE |
| Defendants. | } | INDIVIDUAL PLAINTIFFS' |
| _____ | } | CLAIMS |

Now comes the Defendant, BMW of North America, LLC, ("BMW NA"), in the above-captioned matter, who respectfully submits the within Memorandum of Law in support of its Motion to Dismiss Plaintiffs' First Amended Complaint, ("FAC"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, to sever the individual Plaintiffs' claims in accordance with Rule 21 of the Federal Rules of Civil Procedure.

## I.     PRELIMINARY STATEMENT

On November 23, 2018, subsequent to their opting out of a multi-state class action litigation which claimed excessive oil consumption in BMW vehicles equipped with N63 engines, Plaintiffs pooled together to file the instant action.  *See Bang v. BMW of N. Am., LLC*, No. CV 15-6945, 2016 WL 7042071, at *1 (D.N.J. Dec. 1, 2016) ("Bang Class Action").

Plaintiffs are a group of dissimilarly situated parties, who purchased different years, makes, and models of allegedly defective BMW vehicles.  The *only* alleged common thread

amongst Plaintiffs is that their respective BMW vehicles were each equipped with BMW N63 engines, which, similar to the Bang Class Action plaintiffs, they claim consume an "excessive" amount of oil.

Collectively, in what appears to be one of several pending attempts by their counsel to file his own mini N63 Class Actions[1], Plaintiffs assert four causes of action as follows: breach of express and implied warranties pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.*, ("Mag-Moss") ("Count I"); breach of implied warranty of merchantability pursuant to § 672.314, Fla. Stat. ("Count II"); breach of express warranty pursuant to § 627.313, Fla. Stat. ("Count III"); and deceptive trade practices pursuant to Florida's Deceptive and Unfair Trade Practices Act, § 501.201, *et seq.*, Fla. Stat. ("FDUTPA") ("Count IV").[2]  Specifically, Plaintiffs allege that their respective vehicles were equipped with BMW's N63 engine, which they claim to be defective inasmuch as they consume an "excessive" amount of oil ("Oil Consumption Defect").

Plaintiffs' FAC should be dismissed for numerous reasons.  And, to the extent that the Court finds that a complete dismissal is not warranted, the claims of these dissimilar and improperly joined Plaintiffs should be severed, with each Plaintiff being required to file an individual complaint and pay the appropriate court filing fees in a proper venue.

---

[1] Plaintiffs' counsel, in a serial fashion, has filed the following, nearly identical, multi-plaintiff lawsuits in connection with the BMW N63 engine: *Schneider, et al.*, 1:18-cv-12239-IT (D. Mass); *Shumakh, et al.*, 1:18-cv-07168-MKB-CLP (E.D.N.Y.); *Johns-Pratt, et al.*, 3:18-cv-01799-VLB (D. Conn.); *Moore, et al.*, 1-18-cv-05169-RWS (N.D. Ga.); *Sarwar, et al.*, 2:18-cv-16750-SRC-CLW (D. N.J.); *Hurley, et al.*, 18-5320 (E.D. Pa.); *Grover, et al.*, 1:19-cv-00012 (N.D. Ohio); *Nyarko, et al.*, 1:18-cv-03618-RDB (D. Md.); *Harris, et al.*, 4:19-cv-00016-ALM (E.D. Tex.); *Alam, et al.*, 1:19-cv-22 (W.D. Tex.); *Rivera, et al.*, 2:19-cv-7 (N.D. Tex.); *Wulf, et al.*, 4:19-cv-46 (S.D. Tex); *Bryant, et al.*, 2:19-cv-00050-DEJ (E.D. Wis.).

[2] It is significant to note that Plaintiffs' claims do not arise out of the same transaction or occurrence and thus, are improperly pled as single count allegations applicable to all Plaintiffs.  Instead, each Plaintiff should have pled four separate causes of action based on the allegations in the FAC. For ease of reference, the instant Motion will address dismissal of Plaintiffs' respective claims, as if properly pled.

As discussed at length, herein, Plaintiffs' FAC should be dismissed pursuant to Fed.

R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), as follows:

- Counts I, II, III and IV - All Plaintiffs: Pursuant to Rule 12(b)(1), this Court lacks subject matter jurisdiction because the Plaintiffs' claims are improperly joined and individually, their claimed damages are well below the $50,000 amount in controversy required under Mag-Moss;

- Counts I and II - All Plaintiffs: Pursuant to Rule 12(b)(6), all Plaintiffs have failed to state a claim for breach of implied warranty under Mag-Moss and § 627.314, Fla. Stat. because they lack privity of contract with BMW NA;

- Counts I and III - All Plaintiffs: Pursuant to Rule 12(b)(6), all Plaintiffs have failed to state a claim for breach of express warranty under Mag-Moss and § 627.313, Fla. Stat. because the limited warranty does not cover the design defects alleged;

- Count IV - All Plaintiffs: Pursuant to Rule 12(b)(6), all Plaintiffs have failed to state a claim under FDUTPA; and

- Counts I, II, III and IV: Pursuant to Rule 12(b)(6), the claims of the Plaintiffs identified below are time barred and not otherwise preserved by any doctrine of tolling.

## II.    THE PARTIES

BMW NA is a limited liability company with its principal place of business in Woodcliff Lakes, New Jersey.  BMW NA is the wholesale distributor of BMW vehicles in North America and does not sell or lease vehicles directly to consumers.  All new BMW vehicles are covered by a limited warranty, which covers repairs related to defects in materials and workmanship.

In pertinent part, the individual Plaintiffs' allegations are contained in Exhibit "A" and reflect that Plaintiffs purchased different vehicle models on different dates and at different locations, both in and outside the Tampa Division, Middle District and State of Florida.  *See* Exhibit "A."

Collectively, Plaintiffs allege that their respective vehicles were warranted against "defects of workmanship." FAC ¶ 317.  And that they were equipped with BMW's N63 engine (FAC at ¶ 328), which "consume[d] engine oil at an extremely rapid rate."  FAC at ¶ 324. They further allege that the rate of engine oil is "excessive" and constitutes "manufacturing defects." FAC ¶¶ 329 and 349. In support of their allegations regarding the Oil Consumption Defect, Plaintiffs cite the following:

- Quotation from a single, anonymous FAC made in an online forum for BMW owners at bimmerfest.com. FAC ¶ 336;

- Technical Service Bulletins, ("TSBs"), or Service Information Bulletins, ("SIBs"),[3] issued to BMW service technicians in connection with the N63. FAC ¶¶ 340-342, 344; and

- Opinions about the N63 engine found on ConsumerReport.org. FAC at ¶¶ 332, 348.

### III.   LEGAL ANALYSIS

### A.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE THE AMOUNT IN CONTROVERSY REQUIRED UNDER MAG-MOSS IS NOT SATISFIED

### (i)   Standard of Review on Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) and Mag-Moss

Federal district courts are courts of limited jurisdiction, and their jurisdiction may be circumscribed by federal law. *See e.g., Najiy v. City of Miami*, 980 So. 2d 1157 (Fla. Dist. Ct. App. 2008). Mag-Moss provides that the federal courts lack subject matter jurisdiction "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit."  *Grant v. Cavalier Mfg., 229 F. Supp. 2d 1332, 1333, 2002* U.S. Dist. LEXIS 21625, *1 (quoting 15

---

[3] TSBs/SIBs are issued by auto manufacturers to automotive dealers in connection with service requirements for their respective vehicles.

U.S.C. § 2310(d)(3)(B)); *see also Briganti v. Ford Motor co*., No. 08-80683-CV, 2008 WL 11333512, at * 2 (S.D. Fla. Sept. 22, 2008). In cases, such as this one,[4] where the written warranties at issue are "limited", (i.e., not "full" within the meaning of Mag-Moss § 2304), the measure of a plaintiff's damages is derived from the state law governing such breach of warranty claims. *Carter v. Killingsworth,* 477 F. App'x 647, 648 (11th Cir. 2012). In determining whether "all claims" meet the jurisdictional threshold under Mag-Moss, pendent state law claims, attorneys' fees, and punitive damages are <u>excluded</u>. *See Carter,* 477 F. App'x 647, 648; *Matthews v. James Hardie Bldg. Prod., Inc.,* No. 3:16-CV-378-mcr-emt, 2017 WL 6994567, at *3 (N.D. Fla. Nov. 21, 2017); *Ghodrati v. Miami Paneling Corp.,* 770 So. 2d 181, 182, 2000 Fla. App. LEXIS 11885, *1, 25 Fla. L. Weekly D 2237. For purposes of assessing the jurisdictional threshold, under Florida law, Plaintiffs may seek either the cost of repair or diminution in value. *Id.*

When considering a motion to dismiss under Rule 12(b)(1), it is presumed that the cause is outside the federal court's limited jurisdiction, and the burden of establishing the contrary rests upon party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). Typically, dismissal for failure to meet the amount-in-controversy requirement is appropriate "where the pleadings make it clear to a legal certainty that the claim is really for less than the jurisdictional amount." *Leonard v. Enter. Rent a Car,* 79 F.3d 967, 972 (11th Cir. 2002) (citations omitted); *see also Burlington Ins. Co. v. Brown*, 2013 WL 3470724, at *2 (M.D. Fla. July 10, 2013).

*(ii)* ***This Court Lacks Subject Matter Jurisdiction Because Plaintiffs' Claims Are Improperly Joined and Individually, Their Claimed Damages Are Well Below The $50,000 Amount In Controversy Required Under Mag-Moss***

---

[4] Plaintiffs allege that they were each provided with a "limited" warranty. FAC ¶ 396.

5

Plaintiffs' sole basis for asserting federal jurisdiction in this case is Mag-Moss, and that statute expressly precludes the district courts' exercise of jurisdiction for claims less than $50,000.  Given that Plaintiffs' claims have been improperly joined, as further discussed below, even assuming for purposes of Rule 12(b)(1), that the allegations in the FAC are true regarding Plaintiffs' damages, because their claims should be severed, these damages to a legal certainty, do not meet the $50,000 amount in controversy threshold.

The aggregation of claims is only permitted where two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest. Where, as here, each plaintiff is suing on his or her own contract, said claims may not be aggregated to satisfy the amount in controversy requirement.  *Sigel v. Gen. Dev. Corp.,* 59 F.R.D. 577, 581 (M.D. Fla. 1973). The United States Court of Appeals for the 11ᵗʰ Circuit similarly does not allow for aggregation of punitive damages to satisfy the jurisdictional threshold. *Smith v. GTE Corp.,* 236 F.3d 1292 (11th Cir. 2001).

First, 31 of the 41 Plaintiffs allege that they added additional engine oil in between service visits "to prevent the vehicle's engine from failing." *See, e.g.,* FAC ¶ 18 *et seq.* Notably, of the 41 Plaintiffs, only Toufique Valmy, Larry Jones, Michael Whiteman, Arthur Lewis and Greg Chavis, respectively, allege that their vehicle's engine failed and required repair or was replaced.  The remaining Plaintiffs alleged damages are based, entirely, on a hypothetical scenario of "engine failure" which has never actually occurred.  Second, although Plaintiffs allege that the Oil Consumption Defect necessitated "additional service visits and increased maintenance costs," FAC ¶ 360, only 14 of 41 Plaintiffs have alleged out-of-pocket expenses.  *See* Exhibit "A" and FAC.  Even then, the out-of-pocket expenses,

as individually alleged, are significantly below the jurisdictional threshold. However, assuming, arguendo, that Plaintiffs added oil at the rates alleged, the cost of BMW oil ($9-10 per quart) for each Plaintiff's separate claim, would, to a legal (and mathematical) certainty, never amount to $50,000. Third, any reliance by Plaintiffs on the cost paid for their vehicles is not the correct measure of damages; only the cost of repair or diminution in value, neither of which has been alleged by any Plaintiffs, with exception of Greg Chavis and Arthur Lewis, should be considered. *Id.* Last, Plaintiffs' allegation that they "will suffer significant loss when they sell the subject vehicles" is entirely hypothetical, and unsupported by any allegations of Plaintiffs' actual damages.  FAC ¶ 360.[5]

Accordingly, the $50,000 amount in controversy required to confer subject matter jurisdiction upon this Court cannot be established and Plaintiffs' claims must be dismissed.[6]

## B.  PLAINTIFFS' FAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE THEY FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

*(i)    Standard of Review on Motion to Dismiss for Failure to State a Claim For Which Relief Can be Granted Pursuant to Rule 12(b)(6)*

---

[5] Any claim for revocation that is asserted to satisfy the jurisdictional threshold is barred under Florida law, because Plaintiffs lack privity with BMW NA.  *Powers v. Lazy Days RV Center, Inc., No. 8:05-CV-1542T17EAJ, 2006 WL 373011, *2 (M.D.Fla. February 16, 2006); Mesa v. BMW of North America, LLC, 904 So.2d 450, 459 (Fla. 3d DCA 2005); Gilbert v. Monaco Coach Corp., 352 F.Supp.2d 1323, 1334-35 (N.D.Ga.2004); Tolliver v. Monaco Coach Corp., No. 8:06-CV-856-T-30TGW, 2006 WL 1678842, at *2 (M.D. Fla. June 16, 2006)*

[6] We also note that Plaintiffs, Calvin Coleman, Larry Bell, Edwin Dovel, Carlos Sanchez, Terry Young, Robert Gibbs, John Isaak, Jorge Vasquez, Greg Kipple, Thomas David Steele, Joseph Maloney, Alande Brezault, Michael Kirshteyn, Damien Hodge, Cornell Marriott, Midiala Sanchez, Rodney Phanord, Richard Sampieri, Christian Clouse, Sayeed Mohammad, Scott Wood, Benjamin Darwish, Jennifer Mars, John Fowler, Gerard Thomas Kiernan, John Dawson, Iwona Misiuta, Royce Hood, Kristen McNab, Barbara Smith and Keith Goldblum, lack Article III standing, as they fail to  establish the existence of any "concrete, particularized, and actual or imminent" injury.  *See, e.g., Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248 (11th Cir. 2015). Instead, their cases rely on their frustration with having to add engine oil to their respective vehicles and their claims should be dismissed.

In order for a complaint to withstand a motion to dismiss under Rule 12(b)(6), it must "allege adequate facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Where the complaint only "pleads facts that are merely consistent with a defendant's liability [it] stops short of the line between possibility and plausibility of entitlement to relief, and should be dismissed."   *Ocasio–Hernandez v. Fortuno–Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Moreover, although the court accepts all allegations stated in the complaint as true, for purposes of deciding the motion, the court should "nevertheless disregard all legal conclusions that the Plaintiff presents as facts." *Id*. at 11 (quoting *Iqbal*, at 1949-50.)

### (ii)   *Plaintiffs Fail To State A Claim for Breach of Implied Warranty Because They Lack Privity of Contract With BMW NA*

Fla. Stat. § 672.314, establishes that all contracts for the sale of goods contain an implied warranty of merchantability.   State law, not Mag-Moss, creates and governs the enforcement of implied warranty claims. *Ocana v. Ford Motor Co.,* 992 So. 2d 319, 323 (Fla. Dist. Ct. App. 2008).   Under Florida law, "a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of N. Am., LLC*, 904 So.2d 450, 458 (Fla. 3d Dist. Ct. App. 2005).   *See also, Bailey v. Monaco Coach Corp.*, 168 F. App'x. 893, 894-95 (11th Cir. 2006).

Particularly instructive in this matter is the United States Court of Appeals for the 11th Circuit's Decision of *Tershakovec v. Ford Moto Co.*, 2018 U.S. Dist. LEXIS 116130, *33-35, where the Court found in its examination of Plaintiff's breach of implied warranty claim that Defendant, Ford, as an automotive distributor and not a dealer, was <u>not</u> in privity of contract with Plaintiffs, because they could not have purchased their vehicles from Ford.

Based upon same, Plaintiffs' claim for breach of implied warranty was dismissed *with prejudice*.

Here, identical to the Plaintiffs in *Tershakovec*, Plaintiffs allege that they are downstream purchasers, i.e., that they all acquired their vehicles from third-party dealers and not BMW NA.

Additionally, a warranty that "goods shall be merchantable" means "fit for the ordinary purposes for which such goods are used" *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011). Courts hold that the sole ordinary purpose of a vehicle is to provide transportation. *See e.g. Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1288 (N.D. Ga. 2018). Absent, the claims of Cheryl Walters, Toufique Valmy and Jane Johnson, that respectively allege the vehicle was out of service, the vehicle's engine failed and the vehicle vibrated when driving at highway speeds, the remaining 38 Plaintiffs do not allege that their vehicles have failed to provide reliable transportation. *See* Exhibit "A" and FAC.

Accordingly, they have failed to plead facts consistent with a showing that they were in privity of contract with BMW NA or that there vehicles were otherwise not merchantable, as required, and their claims for breach of implied warranty pursuant to Mag-Moss and Florida law, warrant dismissal *with prejudice*.[7]

*(iii)*     ***Plaintiffs Fail to State a Claim For Breach of Express Warranty Under Mag-Moss and § 627.313, Fla. Stat. Because The Limited Warranty Does Not Cover The Design Defects Alleged***

---

[7] To the extent that Plaintiffs argue that agency existed between BMW NA and third-party dealerships to establish privity, we note that the allegations in the FAC do not support this position in accordance with Florida law. *See Ocana*, 992 So. 2d at 325-327.

Plaintiffs fail to state a claim for relief because the express warranty, by Plaintiffs' own admission, only covers repairs needed to correct "defects of workmanship," FAC ¶ 317, whereas the FAC only alleges a design defect. *See Cali v. Chrysler Grp. LLC*, No. 10 CIV. 7606 JSR, 2011 WL 383952, at *2 (S.D.N.Y. Jan. 18, 2011), aff'd, 426 F. App'x 38 (2d Cir. 2011) (in pertinent part, dismissing the plaintiff's claims under Mag-Moss and for breach of express warranty, *with prejudice*, where the complaint alleged a design defect, but the warranty covered only "materials, workmanship and/or factory preparation"). While Florida courts have not directly defined the terms, several persuasive authorities outside of Florida recognize that "materials and workmanship" is a specialized warranty term that refers to manufacturing and not design defects. *Vazquez v. Gen. Motors*, LLC, No. 17-22209-CIV, 2018 WL 447644, at *3 (S.D. Fla. Jan. 16, 2018).

Particularly instructive on this point is Judge Rakoff's opinion in *Cali*, which the Second Circuit affirmed, "for substantially the same reasons stated in [his] careful and comprehensive opinion." *See Cali v. Chrysler Grp. LLC*, 426 F. App'x 38 (2d Cir. Aug. 30, 2011). With respect to its breach of express warranty and Mag-Moss claims, *Cali* involved nearly identical pleadings to the case at bar.[8] The limited warranty in *Cali*, similar to the one at issue here, was limited to repairs needed to correct defects in "materials, workmanship and/or factory preparation." *Id.* at *2. In reasoning that the defendant's express warranty did not cover design defects, the court distinguishes a "design" defect from a "workmanship" defect, stating that, "the terms 'material,' 'workmanship,' or 'factory preparation,' refer to

---

[8] We note that the complaint in *Cali* was also filed by Plaintiffs' Counsel, which explains the striking similarities between the design defect allegations raised in Cali and the instant FAC and supports the direct applicability of the *Cali* Court's holding to this matter.

10

the mechanical process of implementing [the vehicle's] design," whereas design defects implicate "the arrangement of elements that make up [ ] a machine, and the process of selecting the means and contriving the elements, steps, and procedures for producing what will adequately satisfy some need." Id. at 2 (internal quotations marks and citation omitted).

In this case, Plaintiffs have failed to plead a defect in "workmanship" covered under the express warranty.  Rather, on the one hand, Plaintiffs allege that the "underlying cause of the excessive oil consumption" was never addressed, FAC ¶ 343, that the Plaintiffs were each told that their engines "did not warrant any repairs," FAC ¶¶ 36, 43, 51, 59, 66, 74, 81, 88, 95, 103, 110, 118, 125, 131, 140, 147, 144, 154, 162, 170, 178, 185, 193, 200, 208, 223, 232, 240, 248, 256, 264, 274, 281, 289, 295, 302, 308 and that "[s]ome owners and enthusiasts blame the oil consumption on BMW's decision to place the N63's twin-turbochargers between the cylinder heads, and inside the engine V, rather than outside of the engine V, away from sensitive components, where turbochargers are typically located." FAC ¶ 330. Moreover, in support of their argument that BMW NA owed an affirmative duty to disclose the Oil Consumption Defect, Plaintiffs allege that the engine was "unreasonably dangerous," which further echoes the language of strict liability in tort.[9]  See FAC ¶ 356 ("defect is unreasonably dangerous"), and ¶ 339 ("defect poses an unreasonable safety hazard").

On the other hand, Plaintiffs allege that the Oil Consumption Defect represents a "manufacturing defect," FAC ¶ 324, and that the Subject Vehicles were warranted as being "free from defects of workmanship."  FAC ¶ 317.

First, by alleging that the "underlying" issue was never remedied, that the Plaintiffs

---

[9] See McCarthy v. Olin Corp., 119 F.3d 148, 154–55 (2d Cir. 1997) (defining design defect in strict liability as a defect "which results when the product as designed is unreasonably dangerous for its intended use").

were never offered a repair, and that the Oil Consumption Defect was a symptom of poor design choices, Plaintiffs necessarily construe the Oil Consumption Defect as one which was not actually remediable, i.e., no number of warranty-covered repairs could have fixed the engine's faulty design.  In juxtaposing these allegations, Plaintiffs have nonsensically pled that BMW NA breached the warranty because the defect should have been fixed, despite the fact that the defect could never have been fixed given its design specifications.  Second, Plaintiffs' allegation that the Oil Consumption Defect reflects a "manufacturing defect" is disingenuous insofar as Plaintiffs must plead an actual manufacturing defect in order to maintain a claim for breach of a written warranty that only covers "defects of workmanship." *See* FAC ¶ 317; *see also*, *Armadillo Distribution Enterprises, Inc. v. Hai Yun Musical Instruments Manufacture Co.*, 142 F. Supp. 3d 1245 (M.D. Fla. 2015).  Plaintiffs have further generically cited two separate warranties, the New Vehicle Limited Warranty and Certified Pre-Owned Warranty, but fail to indicate, which warranty their respective vehicles were covered by or any specific terms that were breached.  *See* FAC ¶ 396.

Based on similar allegations in *Cali*, the court pointed out that, despite counsel's, (Plaintiffs' Counsel, herein), attempt at oral argument to downplay his use of the word "design" in order to put the claims within the scope of the warranty, "the Court finds that [counsel] in fact attached the appropriate word to the concept he was attempting to explain." *Cali*, at 3.

Likewise, a fair reading of the FAC in this case, reveals Plaintiffs' actual concern is not that the Plaintiffs' engines suffered from a defect in workmanship or were manufactured defectively, but that the N63 was designed poorly.  In light of the foregoing, Plaintiffs' have failed to state a claim for breach of express warranty and Counts I and III must be dismissed.

**(iv)** ***Counts I, II and III for Breach of Implied and Express Warranties Should be Dismissed as to the Claims of Cheryl Walters, Tamim Ghith, Larry Bell, Robert Gibbs, Larry Jones, Midiala Sanchez, Cornell Marriott, Alande Brezault, Joseph Maloney, Carlos Sanchez and Barbara Smith And Counts I and II Only for Breach of Implied Warranty Should be Dismissed as to the Claims of Edwin Dovel, Calvin Coleman, Patricia Hymon, and Richard Sampieri, Because, As Pled, They Are Time Barred***

The claims for the above-identified Plaintiffs for breach of express and implied warranties, brought pursuant to Mag-Moss and Florida state law, are barred by the applicable statute of limitations.  Mag-Moss is silent as to limitations on time to file suit, so the respective five-year and four-year statute of limitations supplied by § 95.11(3)(k), Fla. Stat. and § 95.11(2)(b), Fla. Stat. control.  A claim for breach of warranty accrues when the defect that gives rise to the cause of action is discovered or should have been discovered.  *Smith v. Continental Insurance Co*., 326 So.2d 189 (Fla. 2d DCA 1976); *Florida Power & Light Co. v. Allis-Chalmers Corp.*, 1989 U.S. Dist. LEXIS 16640, at *14 (S.D. Fla. March 21, 1989). Alternatively, to the extent the Court finds that Plaintiffs' claims sound in tort (i.e., negligent design), the applicable statute of limitations is four years. § 95.11, Fla. Stat.

Based on the alleged date(s) and period of time when the above-identified Plaintiffs first experienced the Oil Consumption Defect, *see* <u>Exhibit "A"</u> and FAC, the statutes of limitations on Counts I, II and III have expired. However, Plaintiffs appear not to argue against the applicability of the four-year and five-year statutes of limitation.  Rather, they argue that their claims are not time barred insofar as BMW NA breached its affirmative duty to disclose the alleged Oil Consumption Defect and that BMW NA fraudulently concealed the defect from Plaintiffs.

a. <u>Plaintiffs' Fraudulent Concealment Claim Fails Because BMW NA Did Not Owe a Duty to Disclose the Alleged Defect and the Claim is Barred by the Economic Loss Rule</u>

In order to maintain a claim that the statute of limitations was tolled by defendants' fraudulent concealment of facts, Plaintiffs must demonstrate 1) BMW NA concealed or failed to disclose a material fact; 2) BMW NA knew or should have known the material fact should be disclosed; 3) BMW NA acted in bad faith; 4) BMW NA knew its concealment of or failure to disclose the material fact would induce the Plaintiffs to act; 5) Plaintiffs suffered damages as a result of the concealment or failure to disclose; and 6) BMW NA had a duty to disclose the material fact. *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 335 (Bankr. S.D. Fla. 2013).

An affirmative duty to disclose may arise where there is a fiduciary relationship or where one party has "superior knowledge" not readily available to the other *and* knows that the other is acting on the basis of mistaken knowledge. *In re Takata Airbag Prods. Liab. Litig.,* 2016 U.S. Dist. LEXIS 138976, *179. The latter typically occurs in arm-length transactions where the defendant knows that the other party is relying on its statements in furtherance of the transaction. *Persaud v. Bank of Am., N.A.,* 2014 U.S. Dist. LEXIS 120307, *33, 2014 WL 4260853. Courts hold that generic allegations of knowledge, devoid of factual support, provide no basis for a failure to disclose claim. *See, e.g.*, *Grodzitsky v. Am. Honda Motor Co.,* 2013 WL 690822, at *2, *6 (C.D. Cal. Feb. 19, 2013).

In this case, Plaintiffs do not allege facts sufficient to give rise to an inference that a fiduciary relationship existed, or that they were involved in direct negotiations with BMW NA for the purchase/lease of their vehicles. They allege only that BMW NA had a duty to disclose the existence of the alleged Oil Consumption Defect because it was "unreasonably dangerous" and because BMW NA had exclusive knowledge or access to material facts. FAC

¶ 360. Assuming, arguendo, for the purposes of this motion only, that the alleged defect was "unreasonably dangerous," Plaintiffs have failed to allege the source of any legally cognizable duty to disclose "unreasonably dangerous" defects, or even what constitutes such a defect.

Additionally, Plaintiffs' fraudulent concealment claim is barred by the economic loss rule, which "is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n v. Marsh & McLennan Co*., 110 So. 3d 399, 401 (Fla. 2013). The Southern District Court of Florida in *Vazquez v. Gen. Motors, LLC, No*. 17-22209-CIV, 2018 WL 447644, at *5 (S.D. Fla. Jan. 16, 2018), specifically dismissed Plaintiffs' claim of fraudulent concealment where the claim, as is the case, herein, excluded non-economic damage.

b.  <u>Plaintiffs Claim for Fraudulent Concealment Fails Because They Have Failed to Plead Fraud With the Specificity Required Under Rule 9(b)</u>

Furthermore, the heightened pleading standard set forth in Fed. R. Civ. P. 9(b) applies to Plaintiffs' fraudulent concealment claim.  Rule 9 specifically requires Plaintiffs to allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 662 (11th Cir. 2015).

In *Burgess*, the United States Court of Appeals for the 11th Circuit, in affirming the district court's dismissal of plaintiff's fraudulent misrepresentation claim, found during its

*de novo* review, that merely stating the time period of the alleged misrepresentations and the specific fraudulent statements was insufficient to satisfy the heightened pleading requirements of Rule 9(b).  *Id.* at 662-664.  The factual allegations in this case mirror those in *Burgess*, as majority of the Plaintiffs' claims fail to identify specific dealerships, employees and dates for any servicing or representations regarding their vehicles. *See, e.g.,* FAC ¶¶ 29, 36, 43, 51, 57, 59, 65, 66, 73,74, 88, 95, 102, 103, 118, 124, 125, 131, 140, 146, 147, 154, 162, 169, 170, 178, 185, 193, 200, 208, 215, 222, 223, 248, 264, 273, 274, 281, 308.

Similarly, BMW NA did not manufacture the vehicles at issue and even assuming for only argument sake that it did, Plaintiffs' allegations are circular: equating design choices with knowledge, concealment, or omission of an alleged design defect.  This type of logic, without further proof, has been expressly rejected by other District Courts:

> Plaintiff contends that BMW "had knowledge of the defect from the outset" because "the defect [pled] in the SAC is an engineering decision by BMW...." This argument is advanced without legal support. Moreover, it is a circular argument that could be used to impute knowledge for purposes of the CFA to any manufacturer who designs and markets a product that is later alleged to be defective—"I (consumer) believe this item to be defective; you (manufacturer) designed the item and sold it; ergo, you knew it was defective, and thus you defrauded me when you elected not to tell me about the defect." . . . Plaintiff cannot equate design choices with fraudulent conduct simply by saying so and without pleading facts supporting a plausible inference of knowledge on BMW's part. If Rule 8(a), *Iqbal*, and *Twombly* are to have any force whatsoever, a FAC cannot state a CFA claim that requires the plaintiff plead knowledge by merely alleging that the defendant designed a defective product.
>
> *McQueen v. BMW of North America, LLC,*
> 2014 WL 656619, at *5 (D.N.J. Feb. 20, 2014).

Additionally, Plaintiffs rely on "evidence" of consumer complaints posted in online BMW forums and on ConsumerReports.org, all third-party websites, to demonstrate that BMW NA had knowledge of the alleged defect. Courts routinely reject this type of "vague summaries of hearsay statements by unidentified consumers" when used in support of a claim. *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 520 (N.D. Ill. 2011). Courts have also found defective pleadings where the plaintiff merely points to "data" and "field reports" within the exclusive control of the defendant. *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997).

Here, Plaintiffs allege that BMW NA knew of the alleged defect based on the existence of "pre-release testing data," "durability testing," "early consumer FACs," and "other internal sources." FAC at ¶ 357. Plaintiffs make no allegation whatsoever as to the content of the data, or as to how it is alleged that such data or "other internal sources" were intended to defraud them. Moreover, courts have also held that "[a]wareness of a few customer complaints . . . does not establish knowledge of an alleged defect." *Baba v. Hewlett-Packard Co.,* 2011 WL 317650 (N.D. Cal. Jan. 28, 2011).

Finally, Plaintiffs' reliance on technical service bulletins (FAC at ¶¶ 340-345) and related customer loyalty programs (FAC at ¶¶ 352-353) as "evidence" of BMW NA's "knowledge" of the alleged "defect" is insufficient to plead fraudulent concealment. Courts have reasoned that "[s]uch advisories are generally the result of consumer complaints that cause a manufacturer to investigate, diagnose, and remedy a defect in one of its products. Accepting these advisories as a basis for consumer fraud claims may discourage manufacturers from responding to their customers in the first place." *Alban v. BMW of North America, LLC ("Alban II")*, 2011 WL 900114, at *12 (D.N.J. March 15, 2011). Such

bulletins are a legally recognized method of communicating to dealers "instructions for making . . . diagnoses and repairs," a supplement to a service manual.  40 C.F.R. § 86.096-38(g)(2)(i).  They provide instructions on how to repair different parts of a vehicle – because parts sometimes break, not because they are "known" to be "defective."[10] *See Cali v. Chrysler Grp. LLC*, No. 10 CIV. 7606 JSR, 2011 WL 383952, at *2 (S.D.N.Y. Jan. 18, 2011), aff'd, 426 F. App'x 38.

Plaintiffs have further not sufficiently pled that BMW NA's alleged misrepresentations were unknown or could not have been known within the limitations period. In fact, nearly all Plaintiffs concede that they knew of the oil consumption defect "soon after", "within several months" or "almost immediately" after their respective purchases.  *See* Exhibit "A" and FAC.

As such, Plaintiffs' allegations are insufficient to find that BMW NA was under an affirmative duty to disclose the alleged defect or that BMW NA fraudulently concealed said defect from Plaintiffs and fail to satisfy the heightened pleading requirements under Rule 9(b).

**v.     Plaintiffs Fail to State a Claim Under § 501.201 et seq., Fla. Stat. And The Claims of Plaintiffs Cheryl Walters, Calvin Coleman, Larry Bell, Edwin Dovel, Larry Jones, Robert Gibbs, John Isaak, Joseph Maloney, Alande Brezault, Cornell Marriott, Midiala Sanchez, Rodney Phanord, Richard Sampieri, Scott Wood,**

---

[10] Indeed, the use of such information is largely prohibited by the Federal Rules of Evidence.  *See,* Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction.  But the court may admit this evidence for another purpose, such as impeachment or –if disputed –proving ownership, control, or the feasibility of precautionary measures"); *cf. Pusey v. Becton Dickenson and Co.*, 794 F. Supp. 2d 551, 561 (E.D. Pa. 2011) (barring introduction of recall in products-liability action where recall occurred after plaintiff's alleged injury); *Stearns*, 2009 WL 1635931, at *10 (finding "any allegations with respect [to] attempted repairs or implementation of a new design are inadmissible for the purpose of establishing the elements of" a fraudulent-concealment claim) (citing Fed. R. Evid. 407).

*Patricia Hymon, Tamim Ghith, Barbara Smith and Carlos Sanchez Are Otherwise Time Barred*

FDUTPA bans "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204 Fla. Stat. "The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). To determine whether an act is deceptive or unfair, Florida law uses an objective test: whether "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances," rather than "actual reliance on the representation or omission at issue." *Id.* at 983–84 (internal citation omitted). Heightened pleading is also required under Rule 9(b), to alert "defendants to the 'precise misconduct with which they are charged' and protect[s] defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.,* 847 F.2d 1505, 1511 (11th Cir. 1988) (internal citation omitted).  Moreover, the Plaintiffs' underlying breach of warranty claims alone will not suffice to give rise to a violation of FDUTPA.   *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272 (M.D. Fla. 2008).  Further, the statute of limitations for bringing a FDUTPA claim is four years from the date of purchase or sale of the vehicle and many of the Plaintiffs' claims are time barred.  *Speier-Roche v. Volkswagen Grp. Of Am.*, No. 14-20107-CIV, 2014 WL 1745050, at *6-7 (S.D. Fla. Apr. 30, 2014).

Plaintiffs allege the same set of facts with respect to their FDUTPA claim and their breach of warranty claims.  Thus, for the same reasons that Plaintiffs' fraudulent concealment claim fails, their FDUTPA claim also fails. To wit, conclusory allegations that their vehicles

suffer from a safety-related "defect," FAC ¶ 339, without factual allegations as to what, if any, legally cognizable duty existed, or how BMW NA concealed the alleged "defects" from the Plaintiffs.

Further, the claims of Plaintiffs, Cheryl Walters, Calvin Coleman, Larry Bell, Edwin Dovel, Larry Jones, Robert Gibbs, John Isaak, Joseph Maloney, Alande Brezault, Cornell Marriott, Midiala Sanchez, Rodney Phanord, Richard Sampieri, Scott Wood, Patricia Hymon, Tamim Ghith, Barbara Smith and Carlos Sanchez, are all time barred based on the dates of lease or purchase of their vehicles, as fully set forth in Exhibit "A" and the FAC, herein.

*(vi)* ***Plaintiffs' Request for Class Action Tolling Should Be Denied As It Lacks Legal and Factual Merit***

Plaintiffs have alleged that their claims should be tolled based on class action tolling and relate back to the pleadings of *Bang v. BMW of North American, LLC* (Case No. 2:15-cv-6945), which is the first of the successive class actions, filed on September 18, 2015. Final approval of the class action settlement, which granted certification of the class for settlement purposes only, was entered on September 11, 2018. However, Plaintiffs' expected request is unsupported by the Supreme Court's holdings in *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) ("American Pipe") and *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) ("Agritech") and the holdings as applied by the U.S. Court of Appeals for the 11th Circuit and Florida state courts, because Plaintiffs are not pursuing their claims on an individual basis as putative class members, but instead, as a successive class action.

Illustrative of this point is the court's recognition in *Bay Area Injury Rehab Specialists Holdings, Inc. v. United Servs. Auto. Ass'n*, 173 So. 3d 1004 (Fla. 2d DCA 2015) ("BAIRS"), of an attempted serial class action based on facts and a procedural posture nearly

identical to the instant matter.  Similar to our case, *BAIRS* recognized an attempted class action where a class of opt-outs, preceded by a class action that raised the same claims and sought the same relief, filed suit.  Specifically, the Plaintiffs here allege breach of implied and express warranty, Mag-Moss and FDUTPA; all of which were claimed in *Bang*, albeit FDUTPA in its local form and seek various forms of monetary damages.  That said, the foregoing facts and procedural posture lend itself to the same recognition by the *BAIRS* Court – that Plaintiffs have filed an attempted successive class action.

Relatedly, courts have found the existence of a quasi-class action with the settlement of multi-district lawsuits, where the plaintiffs alleged similar injuries caused by the same defendant due to the same purported product defect. *See, e.g. In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708 DWF/AJB, 2008 WL 682174 (D. Minn. Mar. 7, 2008); *In re Zyprexa Prod. Liab. Litig*., 424 F. Supp. 2d 488, 490-491 (E.D.N.Y. 2006).

Not only do Plaintiffs allege claims and seek relief duplicative of the preceding Bang action, but specifically, all Plaintiffs allege similar claims against BMW NA based upon the same purported defect, to wit, excessive oil consumption in BMWs equipped with N63 engines.  Plaintiffs have further raised these same allegations in **thirteen** successive class actions nationwide.  n.1.

That said, the Supreme Court's holdings in *American Pipe* and *Agritech*, expressly reject application of class action tolling under the facts of this case. *See, e.g., American Pipe*, *supra* at 552-553. (holding the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class FAC and that members of a class who fail to gain certification may timely intervene as individual plaintiffs in the pending action).

What became referred to as "American Pipe tolling rule" also applies to putative class members who, after denial of class certification, opt to bring an individual suit instead of intervene. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983).

In *Agritech*, the Supreme Court was recently confronted with the scope of American Pipe's holding.  The specific query before the Court was whether American Pipe's tolling rule applied to successive class actions.  The Court affirmatively responded that it did not apply.  *Agritech*, 138 U.S. at 1801-1802.  *See also, e.g. Ewing Industries Corp. v. Bob Wines Nursery, Inc.,* 795 F.3d 1324, 1326 (11th Cir. 2015) (tolling for successive class actions allows "limitless bites at the apple").

As is clear, the governing case law, as applied to the facts of this case, does not lend itself to the tolling of any of Plaintiffs' claims based upon *Bang*, because Plaintiffs are not putative class members pursuing individual claims, but instead, a successive class action.

### (vii)     *Plaintiffs' Request for Discovery Rule Tolling Should Be Denied As It Lacks Legal and Factual Merit*

In Florida, the "delayed discovery" doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the act giving rise to the cause of action. That said, the delayed discovery doctrine may only be applied to the accrual of a cause of action and not to toll the statute of limitations. *Hearndon v. Graham*, 767 So. 2d 1179 (Fla. 2000). In this case, the discovery rule is inapplicable, as Plaintiffs concede the defect was not inherently undiscoverable.  Rather, they discovered the alleged Oil Consumption Defect, "soon after", "within several months" or "almost immediately" after their purchases. *See* Exhibit "A" and FAC. Accordingly, Plaintiffs own admissions establish the accrual of their claims shortly after purchasing their vehicles and their attempt

to reframe their claims as accruing when BMW NA allegedly failed to repair their vehicles is without merit.  As such, the discovery rule does not apply to save their otherwise time barred claims.

*(viii)*    ***Plaintiffs' Request for Estoppel Should Be Denied As It Lacks Legal and Factual Merit***

Likewise, Plaintiffs claim for estoppel should be denied as improper and premature. In Florida, equitable estoppel is an affirmative defense, not a cause of action, and resultantly, claims for equitable estoppel are subject to dismissal with prejudice.  *Debose v. Univ. of S. Fla.*, 178 F. Supp. 3d 1258 (M.D. Fla. 2016).  At present, there are no affirmative defenses before the Court to address.  Accordingly, Plaintiffs have improperly pled estoppel in their FAC and dismissal of said allegation, with prejudice, is appropriate under Florida law.

Additionally, in order to assert equitable estoppel, a defendant must have engaged in wrongful conduct that "induced another into forebearing suit within the applicable limitations period*." John Doe No. 23 v. Archdiocese of Miami, Inc.*, 965 So. 2d 1186, 1187 (Fla. Dist. Ct. App. 2007).  Where a plaintiff fails to allege any wrongful conduct or specific acts of fraud or fraudulent concealment by defendant, the theory of equitable estoppel should not be applied. *Id.*

For the same reasons that Plaintiffs fraudulent concealment tolling argument fails, their equitable estoppel argument also fails, as Plaintiffs have not alleged any facts supporting a reasonable inference that BMW NA intentionally misled Plaintiffs with respect to the subject vehicles.

**C.   ALTERNATIVELY, IF THIS COURT DECLINES TO DISMISS THE FAC FOR THE REASONS STATED HEREIN, IT IS RESPECTFULLY SUBMITTED THAT PLAINTIFFS' CLAIMS ARE MISJOINED PURSUANT**

**TO RULE 21 AND SHOULD BE DISMISSED WITHOUT PREJUDICE OR SEVERED**

As an initial matter, this Court should consider the fact that the Plaintiffs consciously chose to opt out of a multi-plaintiff class action setting, only to then re-file several new multi-plaintiff actions throughout the country.  Essentially, they seek the individual benefits of being in a class, but do not want to accept or adhere to the procedural rules, or settlement results, of a class action.  Not only is this method an utter disservice to well defined judicial economies, but as detailed below the joinder of Plaintiffs' claims is not warranted since they do not arise out of the same transaction or occurrence.  And, significantly, in grouping together, the collective Plaintiffs have improperly sought to avoid *tens of thousands of dollars* in filing fees.

Florida's State Supreme Court has noted that "[t]he purpose of the class action is to provide litigants who share questions of law and fact with an economically viable means of addressing their needs in court." *Johnson v. Plantation Gen. Hosp. Ltd. P'ship,* 641 So. 2d 58, 60 (Fla. 1994). When a putative class member opts out of a class, he or she preserves the right to proceed on an individual basis in his/her own subsequent lawsuit. *Bay Area Injury Rehab Specialists Holdings, Inc. v. USAA Casualty Insurance Company*, 173 So. 3d 1004, 1007 (Fla. 2d DCA 2015).

Preserving the right to bring an individual suit, however, in no way permits the individuals to regroup in new multi-plaintiff actions. *See Id.* (opt out class members from prior class action denied new class status; rather they were free only to pursue claims individually as court "recognized the evil of serial class actions").  Indeed, when faced with a similar class action opt out scenario involving re-filings by multiple plaintiffs batched

together, the United States District Court, Eastern District of Pennsylvania, while applying a Rule 21 analysis, appropriately concluded that such joinder of plaintiffs in one action is not permitted. *See In re Diet Drugs*, 325 F. Supp. 2d 540, 541-42 (E.D. Pa. 2004), *appeal dism'd* 418 F.3d (3d Cir. 2005) (severance ordered concerning misjoinder of sixty-two class action plaintiffs who opted out and subsequently filed single action against Wyeth).

In the *Diet Drugs* litigation, the Eastern District of Pennsylvania Court's rationale included the fact that it was evident that the plaintiffs were seeking to avoid the Clerk's required filing fee. *Id.* at 542-43; *see also In re Bittorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80 (E.D.N.Y. 2012) (concern that plaintiffs in similar actions could be evading millions of dollars in filing fees). And, the significance of this consideration related to the avoidance of the Clerk's fee is not limited to its revenue raising aspect alone. Indeed, a Court's required filing fees also serve a gatekeeping function to dissuade the inclusion of plaintiffs in a litigation where their claims lack merit. *See Seroquel Products Liability Litigation*, 2007 WL 737589 (M.D. Florida 2007); *Wilson v. Int'l Longshoreman Ass'n*, No. CV413-277, 2014 WL 47088, at *1 (S.D. Ga. Jan. 3, 2014) (finding "[A] litigant whose filing fees and court costs are assumed by the public ... lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits"); *Malibu Media, LLC v. Does* 1-28, 295 F.R.D. 527, 534 (M.D. Fla. 2012) (admonishing Plaintiffs' joinder of claims by the filing of multi-defendant FACs, because they "have deprived the court of hundreds of thousands of dollars in much needed revenue, while burdening the docket with cases that are difficult to manage … Severance will enable efficient management of each case, preserve the purpose of filing fees and protect the docket against problematic filing practices").

The rationale utilized by the court in *Diet Drugs* in arriving at its decision (as well as the *Seroquel* and *Bittorrent* courts) is extremely relevant here, where the instant Plaintiffs' counsel has, not only improperly batched several plaintiffs together in this case, but similarly commenced other multi-opt-out-plaintiff litigations in various District Courts around the country. n.1. In doing so, these Plaintiffs have collectively *avoided paying tens of thousands of dollars* in required filing fees, and further flooded the courts with meritless claims, some of which may not have been filed had those individuals been compelled to pay a filing fee.

Moreover, here, even putting aside the improper avoidance of filing fees, Plaintiffs simply do not meet the standard for permissive joinder set forth in Fed. R. Civ. P. 20.

The 11th Circuit is clear that where a Plaintiff fails to satisfy the requirements of Rule 20(a), dismissal of the FAC without prejudice and severance of the claim(s) is appropriate. *See, e.g., Barber v. Am.'s Wholesale Lender*, 289 F.R.D. 364 (M.D. Fla. 2013) (finding that Plaintiffs' failure to establish that their claims arose out of the same transaction, occurrence, or series of transactions or occurrences, as required for permissive joinder under Rule 20(a), warranted dismissal without prejudice and severance of the improperly joined claims); *Wigand v. West City Partners, Inc.*, No. 07–61492–CIV, 2008 WL 384394, at *1 (S.D. Fla. Feb. 11, 2008) (granting motion to dismiss misjoined claims in action brought by multiple plaintiffs arising from purchases of condominium units).

In fact, even where joinder is arguably found appropriate, which is not the case here, the 11th Circuit still considers the fairness, prejudice, expedience, costs and practicality of joint claims. The 11th Circuit also specifically considers the attendant concern of a Plaintiff avoiding required filing fees and pursuing frivolous claims under an analysis of permissive joinder. *Malibu Media, LLC v. Does 1-28*, *supra* at 534.

As such, this Court may, in its discretion, dismiss without prejudice, or sever, the claims improperly joined if no substantial right will be prejudiced. *Visendi v. Bank of America, N.A.*, 733 F.3d 863, 870 (9th Cir. 2013). As above-referenced, in determining whether to sever the claims, the courts consider several factors, including whether the claims arise out the same transaction or occurrence, whether there are common questions of law and fact, availability of witnesses, and judicial economy. *Id.* at 870-71.

Moreover, class certification for settlement purposes in the Bang Class Action should not be considered for joinder in the instant litigation, as the manageability of the claims was not accounted for. *See, e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

It is abundantly clear in the instant action that the Plaintiffs' claims are improperly joined. First, the Plaintiffs' claims do not arise out of the same transaction or occurrence. Each of the Plaintiffs purchased his/her respective vehicle from a different dealer, in separate, unrelated transactions. *See* FAC ¶¶ 8-315. Second, although the FAC alleges that each vehicle was equipped with the same engine, the actual performance of the engine bears relation to the make, model, and year of the particular vehicle, and Plaintiffs' vehicles are vastly different in terms of performance expectations, based on these differences. *Id.* It is self-evident that engines do not exist in a vacuum, but rather, they function in tandem with various other component parts, which will vary from model to model and year to year.

Judicial economy is also not served by trying these cases as one, as any technical analysis that may later be required must be undertaken with respect to the *individual* vehicles and not merely by looking at the part alleged to be defective.  Multiple analyses of this sort would only serve to confuse the jury and cause undue delay.  Additionally, Plaintiffs' rights

27

will not be substantially prejudiced by severance of their claims, as they will be free to bring their claims individually. *See Visendi v. Bank of America, N.A., supra* at 871.

In light of the foregoing, it is respectfully submitted that, if this Court does not allow the instant motion to dismiss for the reasons cited herein, Plaintiffs' claims should be severed.

**D.   VENUE IS IMPROPER PURSUANT TO RULE 28 U.S.C. § 1404(a) AND MIDDLE DISTRICT RULE 1.02 AND PLAINTIFFS' CLAIMS SHOULD BE DISMISSED OR TRANSFERRED**

Further, numerous dissimilar Plaintiffs have brought their claims improperly in the Middle District of Florida.  Pursuant to 28 U.S.C. § 1404(a), which provides "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" A district court has broad discretion to transfer an action to a more convenient forum. *See Testa v. Grossman*, No. 5:15-cv-321, 2015 U.S. Dist. LEXIS 141943, 2015 WL 6153743, at *2 (M.D. Fla. Oct. 19, 2015).

Middle District of Florida Local Rule 1.02 serves as a companion to § 1404. It provides that "[a]ll civil proceedings of any kind shall be instituted in that Division encompassing the county or counties having the **greatest nexus with the cause, giving due regard to the place where the claim arose and the residence or principal place of business of the parties (emphasis added)**." M.D. Fla. R. 1.02(c).

In resolving a § 1404(a) motion, the district court first determines whether the action could have originally been brought in the proposed district of transfer, and, if so, the court then weighs the convenience of the parties and considers the interests of justice to determine whether a transfer is appropriate. To make this decision, the Court considers the following factors: (1) the convenience of the witnesses; (2) the location of relevant documents and the

28

relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted).

In this case, Plaintiffs Midiala Sanchez, Rodney Phanord, Richard Sampieri, Yoan Hernandez, Kristen McNab, Thomas David Steele, Joseph Maloney, Alande Brezault, Michael Kirshteyn, Toufique Valmy, Cornell Marriott, Yoan Hernandez, Benjamin Darwish, Jennifer Mars, Gerard Thomas Kiernan, Barbara Smith, Keith Goldblum, Damien Hodge and Kristen McNab, do not reside in the Middle District, nor do they identify any authorized dealer in the Middle District from which they purchased, leased or serviced their respective vehicles.   Instead, the Plaintiffs, in combination, reside and/or purchased their vehicles outside of the Middle District *See, e.g.,* Damien Hodge and Kristen McNab who both reside <u>out of state</u>.  <u>Exhibit "A"</u> and FAC.  Since the above-named Plaintiffs did not reside, purchase or, as alleged, service their vehicles in the Middle District, the locus of the operative facts, witnesses and documentary evidence associated with their claims are outside of the Middle District and their claims have been improperly brought in this venue.

Similarly, Plaintiffs Greg Chavis, Calvin Coleman, Larry Bell, Edwin Dovel, Carlos Sanchez, Terry Young, Larry Jones, Robert Gibbs, Jorge Vasquez, Patricia Hymon, Tamim Ghith and Jane Johnson, do not allege any nexus to the Tampa Division.  *Id.*

For the foregoing reasons, Plaintiffs claims should be dismissed for filing their claims in an improper venue or their cases transferred to their appropriate venue(s) to be initiated

and paid for by Plaintiffs' counsel.  *See Fire Stop Sys. v. Liberty Mut. Ins. Co*., 2015 U.S. Dist. LEXIS 150382, *2-10, 2015 WL 6750788 (granting Defendant's Motion to Dismiss or Alternatively Transfer Venue based on weighing the above-factors in favor of Defendant).

**IV.**    **CONCLUSION**

For the foregoing reasons, the defendant, BMW of North America, LLC, hereby respectfully requests that this Honorable Court dismiss Plaintiffs' FAC, or, alternatively, sever the Plaintiffs' claims.

**V.**    **REQUEST FOR HEARING**

The defendant, BMW of North America, LLC, hereby respectfully requests a one-hour hearing on defendant's Motion to Dismiss.

Respectfully submitted this 27th Day of March, 2019.

By:    /s/ Suzanne M. Valles
Suzanne M. Valles, Esq.
Florida Bar No. 124546
BIEDERMANN HOENIG SEMPREVIVO, P.A.
601 Brickell Key Drive
Suite 700
Miami, Florida 33131
Tel: (646) 218-7541 Ext. 541
Fax: (646) 218-7510
Email: suzanne.valles@lawbhs.com

*Attorneys for Defendant, BMW*
*Of North America, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that the foregoing document was electronically filed this 27th day of March, 2019 by using CM/ECF systems, which will send notice of filing to all counsel of record.

*/s/Suzanne M. Valles*
Suzanne M. Valles, Esq.
Florida Bar No. 124546
